MEDBERRY, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*December 19, 1899 — March 20, 1900.*

*Railroads: Injury to conductor: Negligence of co-employee: " Operating" train: Statute construed.*

Plaintiff, a railway conductor, while standing by the door of a freight car which, in pursuance of his duty, he had caused to be put into his train and drawn up before the freight depot to be unloaded, was struck and injured by a long, heavy bale of felt carelessly and negligently handled by co-employees engaged in unloading the car. It was his duty to see that the door of the car was closed and fastened when the unloading was completed, and to signal the engineer, and he was also watching an open switch connecting with the main line. *Held*, that at the time of the accident he was not engaged in "operating, running, riding upon, or switching" the train, engine, or car, within the meaning of sec. 1816, Stats. 1898, providing that a railway employee so engaged, in the performance of his duty, may recover for injuries caused by the negligence of a co-employee in the discharge of, or in failing to discharge, his duties. DODGE and WINSLOW, JJ., dissent.

APPEAL from an order of the circuit court for Walworth county: FRANK M. FISH, Circuit Judge. *Affirmed*.

For the appellant there was a brief by *Ingalls & Ingalls*, attorneys, and *J. V. Quarles*, of counsel, and oral argument by *Wallace Ingalls*.

For the respondent there was a brief by *C. B. Sumner*, attorney, and *H. H. Field*, of counsel, and oral argument by *Mr. Field*.

The following opinion was filed January 9, 1900:

CASSODAY, C. J.    This is an appeal from an order sustaining a demurrer to a complaint for personal injury, alleging, in effect, that the plaintiff at the time of the injury, and for twenty-five years prior thereto, had been in the employment of the defendant as a conductor in charge of a train running between Elkhorn and the village of Eagle; that such train was known as a combination mixed or passenger train, consisting of freight and passenger cars, engine, etc.; that during all of the time of the plaintiff's employment as such conductor it was a part of his regular duty to see to the making up of such train at the terminal points, and to get the same in readiness to leave such points upon scheduled time; that December 23, 1896, the plaintiff, in the regular discharge of his duties as such conductor, was engaged in the making up of his train preparatory to leaving Elkhorn on one of its regular trips; that it became necessary for the plaintiff, in the discharge of his duties as such conductor, to have a certain car, which was to compose and become a part of such train, unloaded at the freight depot at the station at Elkhorn prior to the leaving of the train; that in the performance of such duty as such conductor the plaintiff caused such car to be put into the train and drawn up beside the freight depot at the station at Elkhorn for the purpose of having the freight then in the car unloaded upon the platform; that it was the plaintiff's duty to see that the door of the car was properly closed and fastened after such freight had been unloaded, and to give proper signals to the engineer of the train when such work should be accomplished; that two co-employees of the plaintiff were engaged in taking out the freight in the car, and that the plaintiff, while in the performance of his duty as such conductor, was standing by the side of the car so being unloaded for the purpose of watching an open switch easterly from the train connecting the main lines of the railway with the track upon which the plaintiff's train was standing, and for the purpose

of closing the car door when the freight should be unloaded, and for the purpose of signaling the engineer of the train when the work should be accomplished, and while so engaged the plaintiff was, by the carelessness and negligence of such employees of the defendant engaged in unloading the car, struck by a long, heavy bale of hair felt, which was carelessly and negligently thrown out of the car by the co-employees of the plaintiff engaged in unloading the same; that the injury was occasioned solely by the careless and negligent manner in which the co-employees of the plaintiff handled and manipulated the heavy bale of material, and without fault or negligence on the part of the plaintiff; that by reason of being struck as aforesaid the plaintiff was then and there seriously injured, and became sick and disabled, and that such injury had been progressive and had rendered him permanently disabled.

As indicated, the complaint expressly alleges that the plaintiff was injured solely by being struck by "a long, heavy bale of hair felt" carelessly and negligently thrown by the defendant's employees, who were co-employees of the plaintiff, engaged in unloading a freight car containing such bales. It is well settled that, in the absence of a statute giving the right, there can be no recovery from the master by reason of the sole negligence of such co-employee. *Moseley v. Chamberlain*, 18 Wis. 700, 705, 706; *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668; *Anderson v. M. & St. P. R. Co.* 37 Wis. 321; *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289. The only statute which is claimed to give any such right of action to the plaintiff in the case at bar declares that: "Every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained within the same by any of its employees without contributory negligence on his part . . . while any such employee is so engaged in *operating, running,* riding upon or switching passenger, freight, or other

trains, engines, or cars, and while engaged in the perform-
ance of his duty as such employee, and which such injury
shall have been caused by the carelessness or negligence of
any other employee, officer, or agent of such company in
the discharge of, or for failure to discharge, his duties as
such." Sec. 1816, Stats. 1898. As the complaint alleges
that the plaintiff was free from contributory negligence, he
is entitled to recover if the facts alleged bring the case
within the provisions of the statute quoted.

That statute has been in force since April 22, 1893, and
has repeatedly been before this court for construction. In
*Smith v. C., M. & St. P. R. Co.* 91 Wis. 503, it was held, in
effect, that a car repairer and a yard switchman were fel-
low-servants, and that the statute did not apply to an injury
sustained by a car repairer through the negligence of such
yard switchman in causing a car to be kicked against the
stationary car in which such repairer was at work. In that
case Mr. Justice MARSHALL, speaking for the whole court,
said: "The words, ' while engaged in the performance of
his duties as such employee,' refer to the words, ' while op-
erating, running, riding upon, or switching passenger or
freight or other trains, engines, or cars.' This, we think, is
very clear. It is a familiar principle that statutes in dero-
gation of the common law should be strictly construed, and
not given any effect beyond the plain legislative intent.
. . . The legislative idea of that part of the law under
consideration plainly is to give a right of action to the class
of employees engaged in operating and moving trains, en-
gines, and cars *while actually so engaged;* and the words
used to express such idea are too plain to leave any room
for a resort to the rules for judicial construction to deter-
mine their meaning." Page 506. In *Ean v. C., M. & St.
P. R. Co.* 95 Wis. 69, it was held that "a freight handler,
while actually engaged in moving a freight car along the
track to the freight house in the course of his employment,

was engaged in operating and moving the car, within the meaning of" the statute quoted. In that case *Smith v. C., M. & St. P. R. Co.* was expressly sanctioned, and some of the language quoted above repeated. In *Hibbard v. C., St. P., M. & O. R. Co.* 96 Wis. 443, it was held that "a warehouseman of a railroad company, who was injured, while sealing the doors of a car attached to an engine, through the negligence of an engineer or fireman in suddenly moving the engine, was not employed in 'operating, running, riding upon, or switching' trains or cars, within the meaning of" the statute quoted. In that case Mr. Justice Wɪɴꜱʟow, speaking for the whole court, said: "That the plaintiff was not at the time of his injury engaged in 'operating, running, riding upon, or switching' a car is so plain that argument of the question is unnecessary. Sealing the door of a car plainly is not operating or running it. This view is in harmony with the previous decisions of this court construing this statute."

In the case at bar it became necessary to have the freight car containing the heavy bales of hair felt unloaded at the freight depot at the station in Elkhorn, in order that it could be taken as a part of the train to Eagle. For that purpose the plaintiff caused that car to be put into the train and drawn up to such freight depot. After that car was unloaded, it would have been the duty of the plaintiff, had he not been injured, to see to it that the door of the car was properly closed and fastened, and to have signaled the engineer of the train when the work should be completed. While the plaintiff was standing by the side of the car so being unloaded, watching an open switch easterly from the train, and waiting to so close the door of the car when it should be unloaded, he was struck by the long, heavy bale of hair felt, and injured. In our judgment, the plaintiff was not, at the time of his injury, engaged in "operating, running, riding upon, or switching" the train, engine, or car, within the

meaning of the statute quoted, as construed by this court. It is unnecessary to consider what has been decided by other courts under different statutes.

*By the Court.*— The order of the circuit court is affirmed.

DODGE, J. I find myself unable to concur in the decision reached by the court, which seems to me to very materially emasculate the statute (sec. 1816, Stats. 1898), and to thwart the purpose of the legislature in enacting the same. The ancient doctrine excusing the employer from liability for an injury to an employee occasioned by negligence of a co-employee grew up at a time when the employees of the same master were few in number and closely connected in their employment, and when, therefore, the opportunity of the employee to know as to the characteristics for caution, intelligence, etc., of his co-employee, and to guard himself against any lapses therein, were much better than those of the employer. The extension of that doctrine to the greatly modified industrial relations of the present day has carried it far beyond the reasons which led to its original adoption, until in modern times it has been applied to men ordinarily having no contact with each other, no opportunity to observe each other, indeed no knowledge of the existence or employment one of the other. This strain on the doctrine has perhaps been stronger in the case of railroad employees than any others. The conductor or the engineer residing at one end of a hundred miles of railroad has no opportunity to know of the qualifications of the switch-tenders, flagmen, track-layers, section-men, or station agents who may from time to time be scattered by his employer along that stretch of track. The stress of haste and expedition resting upon them precludes them from taking precautions against acts of negligence of these various other employees along the route, and almost, if not entirely, negatives the existence of the reasons which led to the adoption of the co-employee doctrine originally.

. Legislatures of many of the states have recognized the inapplicability of this doctrine to certain modern situations, and to those of railroad employees more than others. After several experiments in this and other states, sec. 1816 was adopted in 1893 as an attempt to legislatively define those whose duties were of such a character as to make the application of the co-employee doctrine improper. The statute, doubtless, was not perfect, and there may well be other instances as much entitled to legislative regard as those to which the statute is addressed; but to the extent to which it went it was positive and left to the courts nothing of policy but merely ascertainment of the facts. It created a class of employees whom it declared exempt from the application of this doctrine, and described that class as employees "engaged in operating, running, riding upon, or switching passenger, freight, or other trains, engines, or cars, while engaged in the performance of his duty as such employee." In the first case which arose — *Smith v. C., M. & St. P. R. Co.* 91 Wis. 503, 506,— this construction was declared, and the company was held not liable to an employee injured by reason of the running of engines and cars, because he was not in that class, he being a mere car repairer, engaged in making some repairs upon a car standing in the yard; he was not an "employee engaged in running or operating trains or cars." A similar holding was made in *Hibbard v. C., St. P., M. & O. R. Co.* 96 Wis. 443, as to a yard employee who was sealing the door of a car standing on the track, although he, too, was injured by reason of the moving of an engine.

These decisions were clearly in accord with the statute, for these men were not in the class of employees exempted by the legislature from the co-employee doctrine. Certain employees, however, must have been in the minds of the legislators as coming within the language of the statute, and most surely there must have been included the train crew, namely,

the engineer, the fireman, the conductor, and the brakemen. These employees are, by the statute, exempted from peril from negligence of any others "*while engaged in the performance of their duties as such employees.*" Can it be doubted that a brakeman is in the class so exempted because he may be repairing or fastening a door of a car while the train is in the course of its trip? Is he not then in the performance of his duty as such employee, to wit, as a brakeman? If not, what kind of an employee is he? Has he become a car repairer or a yard man? Shall a fireman, while in the midst of his run, although the engine be for a moment stationary, be held not engaged in the performance of his duty *as such employee* while oiling the engine or tightening a nut upon it, because, forsooth, a mechanic in the shop would not be within the statute if he were doing the same thing? It is a safe inference that this class was selected because its members are obliged to do many of the things which at times are done by other employees, under circumstances which subject them to greater peril. A part of the duty of the conductor and of the brakeman while operating their train is the giving of signals to the engineer and throwing of switches, to accomplish which the crossing of tracks and the exposure of themselves to perils thereby are absolutely necessary, and under such haste as to exclude them from the precautions that might be exercised by yard men in doing the same things. To my mind, a conductor does not cease to be such employee the moment his train stops, nor is he any the less operating it when standing on the platform to signal the engineer than when sitting in the caboose between stations. The situation presented by this case illustrates the propriety of our statute. The conductor's duty of expedition required his presence in such proximity to the car door that he might close it without delay, and his duty to care for his train by watching the open switch required a division of his attention, so that he could not exercise the precautions

which might have been available to an employee of a different class, not burdened with the duty of operating the train. The Iowa statute has been so construed as to give right of recovery under circumstances here presented. *Akeson v. C., B. & Q. R. Co.* 106 Iowa, 54. That statute, while differing from our own, resembles it in some respects, and was much considered in formulating ours. I think decisions upon it are worthy of consideration.

To summarize my views: I think a conductor is one of the class of employees engaged in operating trains, etc.; that while standing beside his train to close a car door and signal the engineer he is "engaged in the performance of his duties as such employee," to wit, as a conductor, and also that he is engaged in operating his train; and therefore may recover for injuries caused by negligence of a co-employee. The rule of strict construction invoked by my brethren does not justify the court in repudiating the clear intent of legislation. That seems to me the result of the decision in this case.

WINSLOW, J. I concur in the foregoing opinion by Mr. Justice DODGE.

A motion for a rehearing was submitted for the appellant on the brief of *Ingalls & Ingalls.*

The motion was denied March 20, 1900.