HARDT, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL. RAILWAY COMPANY, Appellant.

*January 10—January 29, 1907.*

*Railroads: Negligence: Personal injuries to employee: Conditions precedent: Notice of injury: Sufficiency: Evidence: Questions for jury: Findings, when disturbed: Contributory negligence: Anticipation of injury: Assumption of risk: Proximate cause: Surrounding conditions and circumstances: Appeal and error: Instructions to jury: Burden of proof: Requests for instructions: Court and jury: Deliberation of jury: Coercing verdict: Statutes: Construction: Hazards peculiar to railway employees: "Operation of railroads."*

1. In an action to recover damages for an injury to the person, the matters required by sec. 4222, Stats. 1898, to be stated in the notice to be served upon the defendant within one year after the event causing the injury are: The time and place, a brief description of the injuries, the manner in which they were received and the grounds upon which claim is made, and that satisfaction is claimed of the person or corporation notified. *Held,* that a notice addressed to the defendant, declaring that plaintiff demanded satisfaction from the defendant for injuries received by him in a place described, in the performance of his duties as an employee, and that he was injured by a handcar rolling upon and over him down an embankment, is not insufficient because it failed to state, in terms, that the plaintiff claimed that the damage was caused by the defendant. The statute does not require that the notice shall so state.

2. Under sec. 4222, Stats. 1898 (providing, among other things, that the required notice shall be served "upon the person or corporation by whom it is claimed such damages were caused"), service of such notice upon the defendant corporation sufficiently informs it of the claim that the damages were caused by it.

Hardt v. Chicago, M. & St. P. R. Co. 130 Wis. 512.

3. Notice of an injury, claimed to have been caused by a handcar rolling upon and over plaintiff, and given under the require-. ments of sec. 4222, Stats. 1898, was alleged to be defective because there was no specific statement of the grounds upon which the claim was made, in that it did not, in terms, declare that the handcar was precipitated onto the plaintiff by the negligence of the defendant. In an action for such injuries it was amply proved that full disclosure and explanation were made to defendant's special agent within a few days after the accident. *Held*, that defendant could not have been misled by any such omission in the written notice, nor could any intent to mislead be presumed.

4. In an action for personal injuries to a sectionman while engaged in lifting a handcar from the track, questions as to the credibility of plaintiff's testimony as to the conduct of the foreman in lifting the handcar so as to precipitate the whole weight thereof upon the plaintiff, as to whether the action of the foreman was that customarily adopted, and as to whether plaintiff was guilty of contributory negligence, are *held* to be governed by the well-established rule that, under circumstances of mere conflict of credible testimony of witnesses, the supreme court should not and will not overrule the conclusions of the jury and the trial court.

5. In such case the method of removing the handcar described by the plaintiff, and stated in the opinion, is *held* to present no question of physical impossibility.

6. In such case, on the evidence, stated in the opinion, it is *held* that it could not be said as matter of law that plaintiff, standing in front of the handcar, as he did, to control the front end of it, was guilty of negligence where he had no reason to anticipate the result causing his injury, nor that he assumed the risk.

7. Plaintiff, who was injured while engaged in lifting a handcar from the track, the foreman lifting the rear of the car and precipitating it down and upon plaintiff, testified that, but for slipperiness, he and his companion could probably have held the car notwithstanding the conduct of the foreman. *Held*, that such testimony presented a case of an existing condition, in the face of which acts of carelessness were likely to be injurious, and that those acts should be held to be the legal cause rather than the slippery condition of the ground, which constituted merely one of the surrounding circumstances and conditions.

8. Instructions to the jury which assumed that there was evidence upon which the jury might find the facts in accordance with

plaintiff's testimony are *held* not erroneous, where the appellate court also finds that the jury might have done so.

9. It is not error to instruct the jury that the burden of proof is upon the defendant to establish contributory negligence.

10. No error can be predicated merely upon the refusal to give requested instructions where the request was an oral one and the party did not even undertake to formulate the instruction desired.

11. Where the court instructed the jury as to each question of a special verdict where an affirmative answer would be favorable to the plaintiff, that, in order to give such affirmative answer, they must be satisfied by a preponderance of the evidence, it is *held* that the instruction carried to the jury the idea that they could not decide against the defendant without being so satisfied, and to fairly cover a requested instruction that the burden of proof rested on the plaintiff.

12. A trial court has full authority, in the exercise of sound discretion, to offer aid to the jury by way of further instruction or explanation, and may, without impropriety, make inquiries of them as to whether they are likely to agree. Hence it is not error for the court, after the jury had been deliberating for some time, to recall them and ask them if they could be aided in their deliberations either by further instructions or by reading any of the evidence, or the trial judge, before leaving the courthouse for supper, to direct the officer in charge to inquire whether the jury were likely to agree within the next twenty minutes, to which they responded in the negative.

13. The phrase added to sec. 1816, Stats. 1898, by ch. 448, Laws of 1903, "provided that such injury shall arise from a risk or hazard peculiar to the operation of railroads," is hardly accurate, since injuries do not arise from hazards or risks, but from acts or events.

14. The idea intended would seem to be more clearly expressed by describing the injury or the event causing it as *within* such peculiar risk or hazard.

15. The transportation of men and materials over its tracks is part of the "operation of railroads," and none the less so because the vehicle is a handcar.

16. Plaintiff, while engaged with another sectionman and the section foreman in removing a handcar from the track, received an injury caused by the section foreman raising the rear end of the car, thereby causing it to be precipitated upon and over the plaintiff down a steep embankment. *Held* that, while the ultimate purpose of plaintiff and his fellows was to repair the roadbed, they were, at the moment of the injury, engaged in the

Hardt v. Chicago, M. & St. P. R. Co. 130 Wis. 512.

transportation of themselves, their handcar, tools, and materials from a station on the railway to the place of their proposed labor, and the fact that they had reached the end of their trip and were engaged in the act of alighting did not preclude the view that they were still in the course of such transportation, which could not be considered terminated until their destination was completely reached.

17. In such case the risk of injury attending the hurried removal of the handcar at an inconvenient and dangerous place is *held* to be peculiar to railroad business.

18. In such case the trial court was right in refusing to rule that plaintiff was outside the protection afforded employees of railroads by sec. 1816, Stats. 1898, as amended by ch. 448, Laws of 1903.

APPEAL from a judgment of the circuit court for Jefferson county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Action for personal injuries. Plaintiff was a section hand of mature age and experience. On November 27, 1903, the section crew, consisting of foreman with plaintiff and one Davies, proceeded on handcar eastward to within about eighty feet of Rock river bridge, and stopped on a high embankment and were commanded by the foreman to take off the car. Accordingly, and in accordance with custom, plaintiff and Davies took hold of the front end, lifted the wheels off the track and swung the car around to the southward until at right angles to the track, with the rear wheels resting against the inner edge of the south rail. There is dispute as to the width of the crown of the grade at this point, but where the men stood at the front end of the car it was considerably lower than the rail, and either just over or close to the edge where the steep slope of the bank commenced. The foreman, immediately they reached this point, and without warning, lifted the rear end of the car so that the wheels would clear the track, and so that, by reason of its position, it was thrust forward, and Davies and the plaintiff were unable to hold it, partly by reason of the slipperiness of the ground, and plaintiff was thrown down and severely injured by the car. The defendant claimed

that this was the usual method of removing a handcar from a
track with a crew of only three men. Plaintiff testified that
the customary method in a high place like this differed in
that, when the car had been brought to right angles with the
track, the foreman customarily lifted one rear wheel, where-
upon the car was swung further around until that wheel was
over the track, and then the fourth wheel could be lifted over
without peril of precipitating the car down the decline. The
negligence was claimed to consist in the act of the foreman
in thus suddenly lifting the rear of the car and allowing its
whole weight to come upon the men at its front end. The
jury found, by special verdict, (1) that the section foreman
was not in the exercise of ordinary care at the time he lifted
the car from the rail; (2) that such want of ordinary care
was the proximate cause of the plaintiff's injury; (3) that the
latter was guilty of no contributory negligence; and (4) dam-
ages. After motion to reverse the answers to the first, second,
and third questions, and, failing that, that a new trial be
granted, judgment was rendered in favor of the plaintiff for
the amount of damages found by the jury, from which the
defendant appeals.

For the appellant there were briefs by *Harlow Pease* and
*H. H. Field,* attorneys, and *Charles E. Vroman,* of counsel,.
and oral argument by *Mr. Pease* and *Mr. Vroman.*

For the respondent there was a brief by *Kading & Kading,.*
attorneys, and *R. B. Kirkland,* of counsel, and oral argument
by *Mr. C. A. Kading* and *Mr. Kirkland.*

Dodge, J. 1. The first assignment of error is predicated
upon alleged insufficiency of the notice of injury served upon
the defendant within one year after the event. That notice,
addressed to the defendant, declared that plaintiff demanded
satisfaction from the defendant for injuries received by him
at the place described, in the performance of his duties as an
employee, and that he was injured by a handcar rolling upon

and over him down the embankment. The defect, and the only defect, urged by appellant's brief in this notice is that it fails to state, in terms, that the plaintiff claimed that the damage was caused by the defendant company. A complete answer to this criticism is that the statute does not require that the notice shall so state. The matters required to be stated by sec. 4222, Stats. 1898, in the notice are: The time and place, a brief description of the injuries, the manner in which they were received and the grounds upon which claim is made, and that satisfaction is claimed of the person or corporation notified. True, the statute does require that the notice shall be served "upon the person or corporation by whom it is claimed such damages were caused." But it was so served, and obviously, in the contemplation of the statute, the service of such notice sufficiently informs the defendant of the claim that the damages were caused by it. It was suggested upon oral argument that there was no specific statement of the grounds upon which the claim was made, in that the notice does not, in terms, declare that the handcar was precipitated onto the plaintiff by negligence of the defendant. This difficulty, however, is met by the further provision of the statute that the notice shall not be insufficient or invalid because of any inaccuracy or failure in stating the grounds on which the claim is made, provided it shall appear that there was no intention on the part of the person giving the notice to mislead the other party, and that such party was not in fact misled thereby. It was amply proved that full disclosure and explanation were made to the defendant's special agent within a very few days after the accident, so that defendant could not have been misled by any such omission in the written notice, nor could any intent to mislead have been presumed. *May v. C. & N. W. R. Co.* 102 Wis. 673, 79 N. W. 31; *Collins v. Janesville,* 107 Wis. 436, 83 N. W. 695; *Garske v. Ridgeville,* 123 Wis. 503, 102 N. W. 22.

2. Great stress of argument is addressed by appellant to the proposition that the court should have directed a verdict for the defendant by reason of incredibility of plaintiff's testimony that the conduct of the foreman, in lifting both rear wheels at once clear of the rail so as to precipitate the whole weight of the car upon those standing in front, was unusual, and that there was a safer manner customarily adopted in situations like that here involved, and because it is conclusively established that the method adopted was the usual and customary one, to plaintiff's knowledge; that it was the only possible method and involved nothing of negligence on the part of the foreman; and hence that any risk therefrom was fully known to plaintiff and assumed by him, and he was guilty of contributory negligence in placing himself in a position where injury would be likely from that manner of doing the work. While, perhaps, it might be thought that there is a preponderance of evidence in favor of the customariness of this method of removing the rear end of the handcar, resulting from the testimony of two witnesses generally to that effect, and an apparent declaration to the same effect by plaintiff in examination under sec. 4096, Stats. 1898, nevertheless the plaintiff, with much particularity and under a vigorous cross-examination in the presence of the jury, testified distinctly to another method which, obviously, would lessen the danger of such an injury as the plaintiff suffered. He also, being a German with very imperfect command of the English language, explained his understanding or misunderstanding of the questions put to him in the preliminary examination. His manner, intelligence, and fairness were before the jury, as they cannot be before us, and they seem to have believed him; and the trial court, in ruling upon the motion for a new trial, has declared his opinion against the incredibility of such testimony. The rule is thoroughly well established in this state that, under such circumstances of mere conflict of credible testimony of witnesses, this court should not and will not

overrule the conclusions of the jury and the trial court. *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 256, 91 N. W. 666; *Meyer v. Home Ins. Co.* 127 Wis. 293, 297, 106 N. W. 1087; *Peat v. C., M. & St. P. R. Co.* 128 Wis. 86, 107 N. W. 355.

But it is declared that the method of removing the car described by the plaintiff is physically impossible. We confess to utter inability to discover any physical obstacle thereto. With the car at right angles to the track and the rear wheels resting against the inner side of the south rail and the forward part of the handcar tending downward toward a declivity, whether the men holding the front-end were standing over the brow of that declivity or upon the gentler slope immediately adjoining the track we can see no impossibility in the lifting first of one corner of the rear end of the car, the swinging of the forward end so as to carry that wheel over the track, and then the lifting of the remaining corner and shifting the rear end of the car sidewise the few inches necessary to carry the last wheel over the track. The adoption of such a method, instead of appearing to us incredible or even improbable, seems to us supported by the probabilities. A car resting upon its wheels and facing at right angles to the right of way is, of course, much more likely to escape from the control of the three men in charge of it and to run down the embankment than if it stand more nearly parallel to the track so that the wheels must scrape instead of turn to enable it to descend. After a most careful consideration of the contention of appellant's counsel we cannot agree that a position is presented rendering incredible the testimony of the plaintiff as to the manner in which handcars were usually removed from tracks at the top of a fill or embankment like this. If that testimony was believed by the jury there is no further difficulty in justifying their conclusion that a departure from custom by suddenly lifting the rear end and freeing the car

from the obstacle to its descent offered by the rail was conduct which a reasonably prudent man might well anticipate would cause injury to those necessarily standing at the forward end of the car, and which might, therefore, be considered negligence. Nor, in such a case, can we say, as matter of law, that one who stands in front of a handcar, as did the plaintiff, to control the front end of it, is guilty of negligence, when he has no reason to anticipate that its whole weight will be so cast downward and against him by such unusual conduct as that of which the foreman was guilty in this case. Nor, of course, can it be said, as matter of law, that he assumes the risk of that which does not usually take place, and which, therefore, he has no reason to expect.

3. A further contention closely connected with the last is that the lifting of the rear end of the car was shown by uncontradicted evidence not to have been the proximate cause of plaintiff's injury, but that the slippery condition of the ground resulting from a white frost was such. While the plaintiff states that, but for the slipperiness, he and his companion could probably have held the car notwithstanding the conduct of the foreman, yet that it was the sudden pressure against him resulting from such conduct which caused him to slip. There could hardly be a plainer case of an existing condition in face of which acts of carelessness were likely to be injurious so that those acts should be held to be the legal cause rather than the slippery condition of the ground, which constituted merely one of the surrounding circumstances and conditions. *Yess v. Chicago B. Co.* 124 Wis. 406, 102 N. W. 932; *Winchel v. Goodyear,* 126 Wis. 271, 277, 280, 105 N. W. 824; *Stefanowski v. Chain Belt Co.* 129 Wis. 484, 109 N. W. 532.

4. Several of the instructions given to the jury were excepted to, and they are assigned as error, but solely on the ground that they assumed that there was evidence upon which the jury might find the facts in accordance with plaintiff's

testimony. Since we have already concluded that they might have done so, there was no error upon that ground in giving the instructions.

Error is assigned upon an instruction that the burden of proof was upon the defendant to establish contributory negligence. It is contended that this is incorrect for the reason that it might be established by plaintiff's own evidence. The subject was so-lucidly explained, and appellant's position overruled, in *Schrunk v. St. Joseph*, 120 Wis. 223, 230, 97 N. W. 946, as to render any discussion here unnecessary. The rule given by the court was correct.

Error is also assigned because the court declined to give certain instructions at the request of the defendant. As, however, the request was a mere oral one, and did not even undertake to formulate the instruction desired, no error can be predicated merely upon its refusal. *Hacker v. Heiney,* 111 Wis. 313, 87 N. W. 249; *Taylor v. Seil,* 120 Wis. 32, 97 N. W. 498; *Cupps v. State,* 120 Wis. 504, 527, 97 N. W. 210, 98 N. W. 546. Further, the matter of the request that the burden of proof rested on plaintiff was fairly covered by the instruction given. The court instructed the jury as to each of the questions where an affirmative answer would be favorable to the plaintiff that, in order to give such affirmative answer, they must be satisfied by a preponderance of the evidence, which certainly carried to the jury the idea that they could not decide against the defendant without being so satisfied. That is the burden of proof. *Bowe v. Gage,* 127 Wis. 245, 251, 106 N. W. 1074; *Anderson v. Chicago B. Co.* 127 Wis. 273, 280, 106 N. W. 1077.

We find nothing of error nor reason to believe any prejudice to the defendant, in the fact that the court, after the jury had been deliberating for some time, recalled them and asked them if they could be aided in their deliberations either by further instructions or by the reading of any of the evidence, or that, before leaving the courthouse for supper, he directed

the officer in charge to inquire whether the jury were likely
to agree within the next twenty minutes, to which they re-
sponded in the negative. The court has full authority in the
exercise of sound discretion to offer aid to the jury by way of
further instruction or explanation, and he certainly can, with-
out impropriety, make such an inquiry of them as was done
in this case. In such acts there is by no means necessarily
any implication of criticism, as suggested by appellant's coun-
sel, nor of urgency calculated to divert the jury from that de-
liberation which they may think necessary to the solution of
the questions submitted to them. *Douglass v. State,* 4 Wis.
387, 393; *Odette v. State,* 90 Wis. 258, 62 N. W. 1054;
*Secor v. State,* 118 Wis. 621, 95 N. W. 942.

5. Perhaps the most important question presented—raised
by demurrer *ore tenus*—is whether the plaintiff's case falls
within the exception to the common-law fellow-servant doc-
trine declared by sec. 1816, Stats. 1898, as amended by ch.
448, Laws of 1903, "provided such injury shall arise from a
risk or hazard peculiar to the operation of railroads." This
phrase is apparently new in legislation. It is hardly accu-
rate, since injuries do not arise from hazards or risks, but
from acts or events. Perhaps the idea would be more clearly
expressed by describing the injury or the event causing it as
*within* such peculiar risks or hazards. However, we think
the general meaning of the phrase reasonably clear. Before
the passage of the act of 1903 there had been much debated
both the constitutionality and the justice of placing employees
of railroads upon different footing from other workmen not
distinguishable from them either by the character of their
employment or the perils of injury surrounding it. It was
argued that it was neither just nor proper to distinguish one
riveting a boiler in a shop belonging to a railroad company
from one engaged in similar work in the shop of a manufac-
turer of threshing machines or steam dredges; or one felling
timber for a railway company on its right of way from those

performing like work on adjoining land for a private owner.
The supreme court of Minnesota, in *Lavallee v. St. P., M. &
M. R. Co.* 40 Minn. 249, 41 N. W. 974, had declared the un-
constitutionality of such discrimination. In that case, how-
ever, it was recognized that some employees of railroads are
"exposed to peculiar hazards attending that business" of op-
erating railroads legitimately distinguishing them from work-
men in other employments. Some of those peculiarities were
attempted to be described by the writer in his dissenting opin-
ion in *Medberry v. C., M. & St. P. R. Co.* 106 Wis. 191, 81
N. W. 659. Accordingly, the Minnesota court imported into
their statute, by construction, a limitation to employees ex-
posed to such peculiar hazards and whose injuries resulted
from acts or events within such risks. In Iowa we find a
statute exempting injured employees from the fellow-servant
doctrine when their injuries result from wrongs of co-em-
ployees "in any manner connected with the use and operation
of the railway." It will be noticed that in both these statutes,
after the judicial qualification in Minnesota, the expression
"operation of the railroad" occurs as in our own, and, accord-
ingly, their decisions are cited to us as persuasive as to the
meaning of that phrase; it being contended that the removal
of this handcar by the sectionmen could not fall within "op-
eration" of the railroad. In Iowa the weight of decision is
against the view that mere repair of roadbed or track is opera-
tion. *Dunn v. C., R. I. & P. R. Co.* (Iowa) 107 N. W. 616.
In Minnesota, apparently a contrary view prevails. *Nichols
v. C., M. & St. P. R. Co.* 60 Minn. 319, 62 N. W. 386;
*Blomquist v. G. N. R. Co.* 65 Minn. 69, 67 N. W. 804. In
apparent concurrence with which are *Callahan v. St. L. M. B.
T. R. Co.* 170 Mo. 473, 71 S. W. 208; *Stubbs v. O., K. C. &
E. R. Co.* 85 Mo. App. 192, and *Chicago, K. & W. R. Co.
v. Pontius,* 157 U. S. 209, 15 Sup. Ct. 585. What we should
conclude as between such conflicting views may well be left
until some concrete case requires us to decide. The present

one does not involve it, for, while the ultimate purpose of plaintiff and his fellows was to repair the roadbed, they were, at the moment of injury, engaged in the transportation of themselves, their handcar, tools, and materials from a station on the railway to the place of their proposed labor. The fact that they had reached the end of their trip and were in the act of alighting does not preclude the view that they were still in course of such transportation, which could not be considered terminated until destination was completely reached. The removal of the handcar, tools, and materials to their intended place beside the track was clearly part of their transportation. The protection accorded one "riding on an engine" extends to him while in the act of alighting. *Gaffney v. C., M. & St. P. R. Co.* 127 Wis. 113, 120, 106 N. W. 810. We can entertain no doubt that the transportation of men and materials over its tracks is part of the operation of a railroad; and none the less so because the vehicle is a handcar. Such view seems to have the sanction of all decided cases speaking directly on the subject. *Frandsen v. C., R. I. & P. R. Co.* 36 Iowa, 372; *Larson v. Ill. Cent. R. Co.* 91 Iowa, 81, 58 N. W. 1076; *Thompson v. Chappell,* 91 Mo. App. 297; *Chicago, M. & St. P. R. Co. v. Artery,* 137 U. S. 507, 11 Sup. Ct. 129; *Tex. & P. R. Co. v. Hervey* (Tex. Civ. App.) 89 S. W. 1095; *Houston & T. C. R. Co. v. Jennings,* 36 Tex. Civ. App. 375, 81 S. W. 822. It also seems plain that the risk of injury attending the hurried removal of the handcar, at such an inconvenient and dangerous place as the crest of a steep incline, was peculiar to the railroad business. The likelihood of passing trains rendered such act imperative whatever the difficulties or dangers, as it would not ordinarily be in any other employment or business. We conclude the trial court was right in refusing to rule that plaintiff was outside the protection afforded employees of railroads by sec. 1816, Stats. 1898, as amended.

*By the Court.*—Judgment affirmed.