Du Cate, Respondent, vs. Town of Brighton, Appellant.

*November 6—December 13, 1907.*

*Appeal and error: Review: Prejudicial error: Highways: Insufficiency: Negligence: Personal injuries: Trial: Oral request for instructions: Permanent injuries: Evidence: Damages: Instructions to jury: Special verdict: Questions in disjunctive: Prejudicial misconduct of trial judge: Visiting jury room.*

1. In an action for personal injuries the evidence disclosed a case of a plaintiff lawfully using a highway, the existence of one of the ordinary defects common to highways, but serious enough to render it unsafe and insufficient for travel, and the plaintiff thrown out of a vehicle thereby, while in the exercise of ordinary care on her part. *Held*, that such evidence, while not conclusive, made a *prima facie* case against the defendant town, sufficient to take the case to the jury, and hence no error could be assigned in denying the defendant's motions for a nonsuit, to direct a verdict in its favor, for judgment notwithstanding the verdict, and to amend the special verdict by changing answers to the questions.

2. Oral requests for instructions to the jury on the burden of proof are *held* properly refused because not in writing and because that subject was covered by the general charge in different words.

3. In an action for personal injuries the bill of exceptions showed a request for an instruction on the subject of permanent injuries, its refusal and due exception thereto, and an instruction given to the effect that the jury *might* consider the extent and duration of the plaintiff's injuries and whether permanent or not. To this instruction there was also an exception. *Held*, that the evidence, stated in the opinion, neither upheld the

refusal of the instruction requested nor authorized the instruction given.

4. In such case, in view of the record, the supreme court was unable to affirm a contention that the smallness of the verdict showed that the jury did not include any damages for permanent injuries.

5. In an action for personal injuries from a defective highway, the court, as part of the special verdict, submitted a question: "Did the highway officers of the defendant town know, *or* in the exercise of ordinary care and diligence ought they to have known, that the highway was so insufficient and out of repair a sufficient length of time before the accident to have repaired the same, in the exercise of ordinary diligence?" From the evidence the jury might have found either actual or constructive notice, or might have negatived either one and affirmed the other. *Held*, that since it could not be said that the whole jury affirmed either disjunctive proposition, the submission of such question constituted error for which the judgment must be reversed.

6. It is prejudicial error for the trial judge, after the jury had retired to deliberate upon their verdict, and in the absence of counsel, to go to the jury room for the purpose of announcing to the jury that the sheriff would take them out to supper, and, after making such announcement, cautioning them with reference to their conduct while at, going to, or returning from their meal, the official reporter attending and taking down all that was said.

7. Such error requires reversal notwithstanding the fact that the probity of the trial judge is beyond question.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered in an action for personal injury caused by a defective highway. The defendant is one of the towns of Marathon county, and the venue was changed to Wood county by consent. There the case was tried and resulted in a special verdict as follows, omitting a question answered by the court:

"(2) Was the place where the plaintiff was injured at or about 115 rods east of the quarter-post mentioned in the complaint, and within about two rods of the hole or gully

in the highway west of the gate? *A*. Yes. (3) If you answer question No. 2 'No,' then was the plaintiff injured at a point at or about immediately east and north of the gate or bars, referred to and described by the witness F. A. Colby? *A*. No. (4) Was the highway at the point or place where the plaintiff was injured at that time insufficient and out of repair? *A*. Yes. (5) If you answer question 4 'Yes,' then were the accident and plaintiff's injury proximately caused by said insufficiency and want of repair of the highway? *A*. Yes. (6) If you answer question 4 'Yes,' then did the highway officers of the defendant town know, or in the exercise of ordinary care and diligence in the discharge of their duties ought they to have known, that the highway was so insufficient and out of repair a sufficient length of time before the accident to have repaired the same, in the exercise of ordinary diligence? *A*. Yes. (7) Was the plaintiff guilty of any want of ordinary care which proximately caused or contributed to produce her said injury? *A*. No. (8) In what sum was the plaintiff injured by reason of her said injury? *A*. $1,000."

The plaintiff was required to remit from this verdict the sum of $69 erroneously included therein for medical services, and judgment was rendered thereon for $931, with costs. The appellant assigns and argues error in submitting to the jury the sixth question of the special verdict and in refusing to give and giving instructions relating to damages for permanent injuries and in relation to the burden of proof; also in visiting the jury in the jury room during their deliberations and conversing with them about the case and their verdict; also in denying motion for a nonsuit, motion to direct a verdict in defendant's favor, motion for judgment notwithstanding the verdict, motion to amend the verdict, and motion for a new trial. Another group of errors assigned is in the rejection of evidence offered by defendant and in the reception of evidence objected to by defendant.

*R. J. MacBride* and *Geo. L. Jacques,* for the appellant.

For the respondent there was a brief by *Park & Carpenter* and *Groelle & Humphrey,* and oral argument by *B. B. Park.*

TIMLIN, J. 1. We must hold that upon the evidence there was a *prima facie* case made against the defendant, and therefore errors assigned in denying defendant's motion for a nonsuit and its motion to direct a verdict in its favor and its motion for judgment notwithstanding the verdict and its motion to amend the verdict by changing answers to questions must be overruled. It would serve no good purpose to again incorporate the evidence into the report of this case. It would merely show a case of the plaintiff lawfully using the highway, the existence of one of the ordinary defects common to highways, but serious enough to render it unsafe and insufficient for travel, and the plaintiff thrown out of her vehicle thereby, while in the exercise of ordinary care on her part. The evidence was not conclusive on either of the foregoing propositions, but sufficient to take the case to the jury. We find no reversible error in the admission or exclusion of evidence.

2. Concerning errors assigned in giving and refusing instructions, it appears that counsel for defendant orally requested the trial court to "instruct the jury that the burden of proof is upon the plaintiff upon all the questions except question 7." This request was properly refused because not in writing, and because that subject was covered by the general charge in different words, expressing the same idea. *Hardt v. C., M. & St. P. R. Co.* 130 Wis. 512, 521, 110 N. W. 427, and cases cited.

3. The defendant requested the court in writing to instruct the jury as follows:

"There is no evidence in this case showing or tending to show that the plaintiff received any permanent injuries by reason of the accident complained of. So, in answering question No. 8, you must take that fact into consideration, and in arriving at an answer to said question nothing must be allowed for any permanent injuries."

The bill of exceptions shows this request, its refusal, and due exception to such refusal, and that the court instructed

the jury with reference to question No. 8 to the effect that they might consider the extent and duration of the plaintiff's injuries and whether permanent or not. To this part of the charge there was also an exception. We can find nothing in the evidence to uphold the refusal of this instruction or to authorize the giving of an instruction that the jury might consider in their estimate of damages whether the injuries were permanent or not. One of the two physicians who attended plaintiff was called as a witness and he testified that he attended her from the time of the injury on August 21, 1903, until September 5th following, and found her suffering from severe pain in the left side, in the region of the kidney, and across the bowels. Her bowels were somewhat bloated and there was swelling, pain, and tenderness over the left kidney. There was a urinary discharge of blood the next day, and her temperature was 102½, her pulse 106, and he made no further examination and prescribed opiates and a cathartic. He did not think any ill effects attended the injury and peritonitis. He summed up in this way: "Beyond a soreness in the region of the bowels and over one of the kidneys, that was the extent of her injuries, so far as I know." The testimony of the plaintiff herself does not show any permanent injury, and these two are the only witnesses testifying upon the subject. It must be kept in mind that permanent injury is something different from future pain and suffering, and relates to a condition lasting during all the after life of the party injured. A jury might well infer that pain and suffering caused by an injury and continuing up to and existing at the time of trial would continue for some time in the future and estimate the damages accordingly, but the jury could not infer permanent injury from any such testimony as is here quoted, where there are no visible wounds, nothing in the nature of a disability or disease commonly known to be permanent, and no opinion evidence tending to show permanency. *White v. Milwaukee*

*City R. Co.* 61 Wis. 536, 21 N. W. 524; *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183, 61 N. W. 771; *Raymond v. Keseberg,* 91 Wis. 191, 64 N. W. 861; *Boelter v. Ross L. Co.* 103 Wis. 324, 79 N. W. 243. The respondent apparently relies upon the smallness of the verdict to show that the jury did not include any damage for permanent injury and hence that the error was harmless, but we are unable to affirm the correctness of this view upon the record present here. We discover no other error in the charge or in the refusal of requests to charge.

4. The sixth question of the special verdict above quoted shows two issuable propositions disjunctively connected and an affirmative answer. Was it error to submit such question? In *Odegard v. North Wis. L. Co.* 130 Wis. 659, 681, 682, 110 N. W. 809, this question is mooted but not decided. The particular questions of the special verdict under consideration in that case, Nos. 7 and 10, will be found in the report of that case at pages 666 and 667 (110 N. W. 809), and were identical with the question under consideration here. Upon the other hand, in *Woodward v. Boscobel,* 84 Wis. 226, 229, 54 N. W. 332, a judgment was affirmed against a city which rested upon a special verdict containing a question in this form. It does not appear, however, from the report that objection was made to the form of the question. In *Mueller v. N. W. Iron Co.* 125 Wis. 326, 331, 332, 104 N. W. 67, objection seems to have been taken to a question of the special verdict in this form, namely: "Was such condition known to the defendant company, or ought it to have been known to said company?" The judgment resting in part upon the answer to such question was affirmed, and this form of question is approved. In *Lyle v. McCormick H. M. Co.* 108 Wis. 81, 91, 84 N. W. 18, a question similar in form but not identical in substance was approved and held so clear and unambiguous as not to require for the protection of either party any qualifying charge. This form of ques-

tion seems quite persistent. We notice it was employed in *Fehrman v. Pine River,* 118 Wis. 150, 151, 95 N. W. 105, and in *Pautz v. Plankinton P. Co.* 118 Wis. 47, 94 N. W. 654, but in neither of the two cases last mentioned was there any decision upon this point.

On the other hand, we have *Jewell v. C., St. P. & M. R. Co.* 54 Wis. 610, 12 N. W. 83, where the eighth question of the special verdict was as follows:

"Were the defendant's agents guilty of negligence either in not stopping long enough to allow the plaintiff to alight from the train or in suddenly starting the train after the plaintiff came upon the platform on her way from the car to the depot platform? *A.* Yes."

The court considered the evidence in order to ascertain the prejudicial effect of this question and answer, and declared the rule that, in submitting special verdicts to a jury, each question submitted should be limited to a single direct and material controverted issue of fact, and in such a way that the answer would necessarily be positive, direct, and intelligible. In *Murray v. Abbot,* 61 Wis. 198, 20 N. W. 910, the seventh question of the special verdict was as follows:

"Were those in the management, operation, or ordering repairs of the road guilty of negligence in not causing, by general rules or by special instructions, trains to be slackened from their usual speed in approaching and crossing the bridge in question, while men were at work upon it, situated as the bridge was, and of its height and length, and with the approaches to it such as they were? *A.* Yes."

The court said:

"The seventh question is likewise obnoxious to the criticism passed upon it by defendant's counsel as being uncertain, in the disjunctive, and not limited to any single fact or issue. As the counsel observes, it is impossible to tell from the question and answer who it was that had been guilty of negligence in failing to adopt rules or to give special instructions for slackening the speed of trains approaching, etc. Was it those who had in charge the general management and

operation of the road, or was it those who had charge of making repairs on the road? If questions of this nature are proper to be submitted to a jury at all, they should be framed in a way to admit of positive and direct answers. In this case the jury may have found that it was an act of negligence on the part of those who had charge of the general management of the road in not enacting proper rules. Or the jury may have thought that those who ordered the repairs of the bridges did not perform their duty, by failing to adopt rules or give special instructions applicable to the case."

In *Klochinski v. Shores L. Co.* 93 Wis. 417, 67 N. W. 934, the fourth question of the special verdict read:

"Was the defendant guilty of negligence, or a want of ordinary care, or such care as persons or corporations of ordinary care ordinarily use, which was the proximate cause of plaintiff's said injury? *A.* Yes."

The court apparently looked into the evidence to determine the prejudicial character of such a question, and condemned the question as follows:

"The question is compound, and, while calling for an affirmative answer, it is in the alternative. . . . The question was framed in objectionable terms, and the verdict as a whole is fatally defective for uncertainty, and for that it does not extend to and cover a material part of the issue, in respect to which the evidence was conflicting."

In *Lowe v. Ring,* 123 Wis. 370, 101 N. W. 698, question 19 of the special verdict inquired of the jury: "Was there a contract, express or implied, that Ring should receive a salary from the bank as president?" The jury answered in the affirmative, and the form of question was disapproved. There was a material difference in the right of the parties, depending or turning upon whether the contract was express or implied. The evidence showed there was no proof of an express contract, and a finding of implied contract was not sufficient in the law to uphold a recovery. It was said that the answer to question 19 of the verdict left it uncertain

whether the jury found an express contract or an implied contract, and that some members of the jury might have assented to this affirmative answer under the belief that there was an express contract and some members under the belief that there was an implied contract. Besides, there was nothing in the charge tending to cure this uncertainty, and the verdict was held fatally defective. This test was applied in *Peake v. Superior*, 106 Wis. 403, 82 N. W. 306, which, although overruled upon another point in *Fehrman v. Pine River*, 118 Wis. 150, 95 N. W. 105, may still be cited upon the question now under consideration. See, also, *Gehl v. Milwaukee P. Co.* 116 Wis. 263, 93 N. W. 26; *Rhyner v. Menasha,* 107 Wis. 201, 207, 83 N. W. 303.

Another class of cases will be found in which disjunctive findings of the jury were held not fatal to the judgment, because, although disjunctive in form, both propositions of the question referred to the same person or thing and covered completely the real issue instead of presenting two alternative issues. *Patry v. C., St. P., M. & O. R. Co.* 82 Wis. 408, 52 N. W. 312; *Lyon v. Grand Rapids,* 121 Wis. 609, 622, 99 N. W. 311.

Still another class of cases is found where the two propositions submitted in one question of the special verdict are so conjoined that an affirmative answer would create no ambiguity, but, on the contrary, establish the verity of both, as in *Hebbe v. Maple Creek,* 121 Wis. 668, 99 N. W. 442; *Shaw v. Gilbert,* 111 Wis. 165, 183, 86 N. W. 188; *Dugal v. Chippewa Falls,* 101 Wis. 533, 77 N. W. 878. But in cases like the instant case, where there was evidence from which the jury might have found either actual or constructive notice, or might have negatived either one and affirmed the other, and in all like cases in which, after the question is answered, it cannot be said that the whole jury affirmed either of the disjunctive propositions, the submission of such question constitutes error for which the judgment resting

thereon must be reversed. *Mueller v. N. W. Iron Co.* 125 Wis. 326, 331, 332, 104 N. W. 67, so far as it tends to support the contrary rule, must be disapproved.

5. After the jury had retired to deliberate upon their verdict and in the absence of counsel, the circuit judge, taking with him his stenographer to report all that might be said, went to the jury room for the purpose of announcing to the jury that the sheriff would take them out to supper; but, after making such announcement, he cautioned them with reference to their conduct while going to, at, or returning from their meal. One of the jurors announced that they could not agree upon the second question of the verdict, and the judge told him they could or probably would agree after they had more time to consider, and again admonished them with reference to their conduct in talking about or discussing the case. When the error predicated upon this transaction was first presented to this court by appellant, the transaction seemed so devoid of prejudicial effect and the matter so usual and ordinary and the learning, experience, and probity of the circuit judge so well known that the writer was not inclined to consider this a serious or reversible error. But the decided cases are found to be strong, authoritative, and consistent in treating this as reversible error. *Havenor v. State,* 125 Wis. 444, 104 N. W. 116; *Hurst v. Webster Mfg. Co.* 128 Wis. 342, 107 N. W. 666; sec. 2855, Stats. (1898); *Sargent v. Roberts,* 1 Pick. 337; *People v. Linzey,* 79 Hun, 23, 29 N. Y. Supp. 560; *Kilgore v. Moore,* 14 Tex. Civ. App. 20, 36 S. W. 317; *Read v. Cambridge,* 124 Mass. 567; *State v. Wroth,* 15 Wash. 621, 47 Pac. 106. And see cases collected in 54 Cent. Law Jour. 2.

6. For error in refusing the request to charge relative to damages for permanent injury, for error in submitting the sixth question of the special verdict, and for error in communicating with the jury and giving them admonitory instructions respecting their conduct in the jury room after

·they had retired for deliberation and in the absence of counsel, the judgment of the court below must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.