Murray, Administratrix, etc., vs. Abbot.

*September 25 — October 14, 1884.*

SPECIAL VERDICT: NEW TRIAL. *(1) Inconsistent findings. (2) Form of questions.*

1. A special verdict finding that the foreman in charge of men repairing a railroad bridge was guilty of negligence in not giving danger signals to an approaching train as it was his duty to do *under the*

*rules and regulations of the company*, and that those in the management of the road were guilty of negligence in not causing, by general rules or by special instructions, the speed of trains approaching and crossing such bridge to be slackened, should be set aside as inconsistent, and a new trial granted.

2. Questions submitted for a special verdict should admit of positive, direct, and intelligible answers. A question: " Were those in the management, operation, or ordering repairs of the road guilty of negligence in not causing, by general rules or by special instructions, trains to be slackened ?" etc., criticised, as being uncertain, in the disjunctive, and not limited to any single fact or issue.

APPEAL from the Circuit Court for *Columbia County*.

The action was commenced originally against the Wisconsin Central Railroad Company and John A. Stewart and *Edwin H. Abbot*, trustees thereof, to recover damages for the death of the plaintiff's intestate which resulted from injuries received by him while employed as a bridge repairer on said railroad. No service was had upon Mr. Stewart, and as to the company the action was discontinued at the trial.

From the evidence it appeared that early in the afternoon of January 15, 1881, the intestate was engaged, with several others, under a foreman, Parmeter, in repairing a railroad bridge, about 350 feet long, over Otter Tail creek in Chippewa county, and was at a point near the middle of the bridge when a freight train (No. 9), then several hours overdue, bound northward, was seen coming around a curve some distance south of the bridge. The foreman warned the men of the approach of the train, and they sought places of safety. The intestate attempted to reach the embankment at the north end of the bridge, but before he had succeeded in so doing was struck by the engine and knocked from the bridge, receiving injuries which resulted in his death. The day was foggy, misty, and dark. The train was running at a speed of about fifteen miles an hour.

The jury, in reply to questions submitted to them by the court, found a special verdict as follows:

1. How far from the bridge in question was train No. 9, when the men upon it discovered that there were men at work upon the bridge? *A.* Thirty feet.

2. Were the train-men on said train, or any of them, guilty of negligence in running the train, in approaching and crossing the bridge at the speed they did, after they discovered that men were on it? *A.* No.

3. Did the deceased know that a train was expected, running out of time, approaching from the direction which the train in question did? *A.* No.

4. If so, did he know that it would approach and cross the bridge at the ordinary speed, unless the foreman gave a signal that there was danger to those employed on the bridge? *A.* No.

5. Was it Parmeter's, the foreman's, duty, under the rules and regulations of the company, in case of danger to the men under him, to give danger signals, indicating that there was danger to them, to approaching trains? *A.* Yes.

6. If so, was he guilty of negligence. in not giving such signal upon the occasion in question? *A.* Yes.

7. Were those in the management, operation or ordering repairs of the road, guilty of negligence in not causing, by general rules or by special instructions, trains to be slackened from their usual speed in approaching and crossing the bridge in question, while men were at work upon it, situated as the bridge was, and of its height and length, and with the approaches to it such as they were? *A.* Yes.

8. Was the plaintiff himself guilty of negligence contributing to the accident? *A.* No.

9. If, in view of your finding, the court should be of the opinion that the plaintiff ought to recover, at what sum do you assess her damages? *A.* $2,750.

Upon such verdict the court rendered judgment in favor of the plaintiff. The defendant appealed.

For the appellant there was a brief signed by *Edwin H.*

Murray, Adm'x, etc., vs. Abbot.

*Abbot*, *in pro. per.*, and *Howard Morris* and *Jenkins*, *Winkler & Smith*, of counsel, and the cause was argued orally by *Mr. Jenkins*.

*Geo. P. Knowles*, for the respondent.

COLE, C. J. We think a new trial should have been granted in this case because of the manifest inconsistency in the special findings. In the first place, the jury finds that there was no negligence on the part of the men operating the train in approaching and crossing the bridge at the speed they did after they discovered that men were on it. Then, in answer to the fifth question submitted, the jury find that it was foreman Parmeter's duty, *under the rules and regulations of the company*, in case of danger to the men under him, to give danger signals to approaching trains, indicating that there was danger to the men; and, in answer to the sixth question, they find that Parmeter was guilty of negligence in not giving such signals upon that occasion. Now, as the learned counsel for the defendant claimed and clearly showed, the fifth finding manifestly proceeds on the ground that the company had made rules and regulations with respect to trains crossing a bridge undergoing repairs, which rules and regulations required the foreman to give danger signals to approaching trains. This is the necessary implication or plain meaning of that finding.

The seventh question is this: "Were those in the management, operation, or ordering repairs of the road guilty of negligence in not causing, by general rules or by special instructions, trains to be slackened from their usual speed in approaching and crossing the bridge in question, while men were at work upon it, situated as the bridge was, and of its height and length, and with the approaches to it such as they were?" *Answer.* "Yes." If this question and answer can have any intelligible meaning given to them, they must be understood as finding that the officers of the company —

they who managed and operated the road — who had charge of and ordered repairs, were guilty of negligence in. not causing or requiring, by a general rule or by special instructions, that trains should be slackened in their usual speed when approaching and crossing the bridge in question, while men were at work upon it, situated as the bridge was with respect to approaches, and being of the height and length the bridge was. Certainly, this is a finding that those in the management of the road were guilty of negligence in not causing or requiring, by general rule or special instruction, that the speed of trains in approaching and crossing a bridge undergoing repairs, should be slackened. The jury had just found that the foreman was guilty of negligence because he did not give danger signals to approaching trains, as the rules required him to do. Of course, these danger signals could have had no other object than to cause the approaching train to slacken its speed. So, in the one case, negligence is predicated on the fact that the foreman failed to comply with the general rules or special instructions; in the other case, negligence is predicated on the fact that proper rules or special instructions had not been adopted or given by those who had the management and operation of the road in charge, or by those who had the ordering of repairs upon it. It seems to us the inconsistency in these findings is too obvious to require further comment.

The seventh question is likewise obnoxious to the criticism passed upon it by defendant's counsel, as being uncertain, in the disjunctive, and not limited to any single fact or issue. As the counsel observes, it is impossible to tell from the question and answer who it was that had been guilty of negligence in failing to adopt rules or to give special instructions for slackening the speed of trains approaching, etc. Was it those who had in charge the general management and operation of the road, or was it those who had charge of making repairs on the road? If questions of this nature

Murray, Adm'x, etc., vs. Abbot.

are proper to be submitted to a jury at all, they should be framed in a way to admit of positive and direct answers. In this case the jury may have found that it was an act of negligence on the part of those who had charge of the general management of the road in not enacting proper rules. Or the jury may have thought that those who ordered the repairs of the bridges did not perform their duty, by failing to adopt rules or give special instructions applicable to the case.

Said the late eminent chief justice, in *Carroll v. Bohan*, 43 Wis. 218: "The statute providing for special verdicts is an excellent one, tending to dispel the occasional darkness visible of general verdicts. But special verdicts are worse than useless, if courts do not submit for them single, direct, and plain questions, and insist upon positive, direct, and intelligible answers. Indirect, evasive, uncertain, or unmeaning answers should never be received. And when none other can be drawn from a jury the verdict should not stand for a moment." Page 221. These remarks of the chief justice are quite pertinent to this case. The propriety of submitting to a jury such a question as whether it is negligence on the part of those who have charge of the management and operation of a railroad in not adopting rules, or in not giving special instructions, for slackening the speed of trains approaching a bridge undergoing repairs, is not obvious; but if it is a question for a jury to pass upon at all, it should be submitted in a clear manner.

There are other questions discussed on the briefs of counsel, but we shall not consider them, because we think a new trial should have been granted for the reasons already given.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.