No. 8652.

HUTCHINS v. HAFFNER.

1. HUSBAND AND WIFE—*Torts of the Wife*, committed out of the presence and without participation of the husband, do not charge him.

2. FAMILY AUTO CAR—*Wife Agent of Husband.* The husband is liable for the negligencies of the wife. in driving an auto car, kept for the use of the family, and which she drives with his permission. The wife in such case is the agent of the husband. Cases *contra* cited.

3. INSTRUCTIONS—*Oral.* Sec. 192, Mill's Code (Rev. Code, sec. 211) has no application to a communication of the judge to jury, not as to the law of the case, but an exhortation to endeavor to harmonize their differences, and come to an agreement. The communication not in any way indicating the opinion of the court as to the merits of the controversy, and not tending in any degree to coercion upon the jury, was held entirely proper and praiseworthy, though made in the absence of counsel, and without their knowledge.

*Error to Denver District Court, Hon. W. D. Wright, Judge.*

Messrs. WEST & STRICKLAND and Mr. K. D. BATTLE, for plaintiff in error.

Messrs. DANA & BLOUNT, for defendant in error.

Mr. Justice Allen delivered the opinion of the court:

THE defendant in error, plaintiff below, brought suit against a husband and wife, defendants below, to recover damages for injuries resulting from a collision between a motorcycle, on which plaintiff was riding, and an automobile owned by the husband, one of the defendants, and operated at the time of the accident by his wife, the other defendant.

Both the husband and the wife were accustomed to drive the automobile at pleasure. The wife had the husband's general permission to drive the automobile whenever and wherever she desired. At the time of the accident the wife was driving the machine for her own pleasure, accompanied

by one of her lady friends. The husband did not know at the time that the machine was being used, but it was used under the general permission before mentioned. It appears to be conceded also, that the automobile had been purchased by the husband, for the purpose of being used by himself and his wife, or either of them, for their pleasure, comfort, recreation, and convenience, and for the purpose of entertaining themselves and their friends and guests.

Judgment was rendered against both defendants, but the husband only has sued out a writ of error.

The first and main question presented, and involved in the first thirteen assignments of error, is the liability of the husband, plaintiff in error, under the facts as hereinbefore stated, and assuming that the wife was negligent, and liable in damages to the plaintiff below.

It is settled that in this state a husband is not liable for the tort of his wife, committing during coverture and without his presence, and in which he in no manner participated. *Schuler v. Henry,* 42 Colo. 367, 94 Pac. 300, 14 L. R. A. (N. S.) 1009; *Tuttle v. Shutts,* 43 Colo. 534, 96 Pac. 260. It is also clear that the husband in this case is not liable as a bailor of the automobile for the negligence of the wife as bailee. 5 Cyc. 212.

The liability of the husband, if any exists in this case, must be based upon the principal and agent or master and servant theory. The cases hereinafter cited deal with that theory under facts similar to those in the case at bar. The theory is of the same force and effect whether it is sought to hold a husband liable for the negligence of his wife, or the father for the negligence of his child in operating an automobile under the circumstances existing in these cases.

The decisions bearing upon the liability of an owner of an automobile, kept for family use, for the negligence of a member of his family in driving the machine with his consent, cannot be reconciled.

A majority of this court have chosen to adopt the doctrine that a husband is liable for an injury inflicted by his automobile, which he purchased for family use, while it

was being operated by his wife, solely for her own pleasure under his general permission to use the machine whenever and wherever she pleased, upon the theory that the wife was the husband's agent in carrying out one of the purposes for which the car was purchased and owned.

This rule is supported by the case of *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59, wherein it is said:

"It seems too plain for cavil that a father who furnishes a vehicle for the customary conveyance of the members of his family makes their conveyance by that vehicle his affair —that is, his business—and anyone driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one as well as by all."

In that case it was held that a daughter, in using her father's automobile for her own pleasure, is his servant in doing so, if he purchased and kept the automobile for the use of his family. The father was held liable for his daughter's negligence in driving the automobile. The liability was based, not on the relationship of parent and child, but on the relationship of agency or service.

The case of *Birch v. Abercrombie, supra,* has been approved and followed in two later Washington cases, and approvingly cited in a number of other cases. In *Guignon v. Campbell,* 80 Wash. 543, 141 Pac. 1031, where a married woman who owned an automobile as her separate property, and kept it for family purposes it was held that she was liable for an injury resulting from its negligent operation by her son who was using the car to drive a servant to a street car. In *Switzer v. Sherwood,* 80 Wash. 19, 141 Pac. 181, Ann. Cas. 1917A 216, where an automobile owned by a husband and wife as a community, and used for family

purposes and in connection with the business of selling real estate, the owners were held liable for an injury inflicted by the car when driven by a daughter of the owners.

Adopting the reasoning in *Birch v. Abercrombie, supra,* it was held in *Lewis v. Steele,* (1916) Mont., 157 Pac. 575, that a father was liable for an injury resulting from the negligent operation of his automobile where it was kept for family use, and his sons were relied upon to operate it for the family pleasure, and, at the time of the injury, his son was driving some of his friends to a dance, and, after leaving them, intended to return for his mother and father, to take them to the dance, it being held that he was acting as his father's servant. In *Davis v. Littlefield,* 97 S. C. 171, 81 S. E. 487, an owner of an automobile kept for family use has been held liable for an injury inflicted by the negligent operation of the car by his son, while he was using it for his own pleasure, where he was permitted to use the car whenever he saw fit. In *Griffin v. Russell,* 144 Ga. 275, 87 S. E. 10, L. R. A. 1916F, p. 216, where recovery was sought against an owner who kept a car for family use, the petition in that case, stating that the car, at the time of the injury, was being driven by the owner's son for the pleasure of himself and friends, was held good on demurrer.

In accord with the foregoing cases are the following: *Marshall v. Taylor,* 168 Mo. App. 240, 153 S. W. 529; *Lemke v. Ady* (Iowa), 159 N. W. 1011; *Stowe v. Morris,* 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224; *Daily v. Maxwell,* 152 Mo. App. 415, 133 S. W. 351. Other cases to the same effect are: *Missell v. Hayes,* 86 N. J. Law, 348, 91 Atl. 322; *Allen v. Bland* (Tex. Civ. App.), 168 S. W. 35; *McNeal v. McKain,* 33 Okl. 449, 126 Pac. 742, 41 L. R. A. (N. S.) 775; *Moon v. Matthews,* 227 Pa. 448, 76 Atl. 219, 29 L. R. A. (N. S.) 856, 136 Am. St. Rep. 902; *Ploetz v. Holt,* 124 Minn. 169, 144 N. W. 745; *Kayser v Van Nest,* 125 Min. 277, 146 N. W. 1091.

In sec. 653, Berry on Automobiles (2nd ed.), it is said:
"The rule is followed in most of the states in which the question has been decided, that one who keeps an automo-

bile for the pleasure and convenience of himself and his family, is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family."

Contrary to the doctrine adopted by this court are, among others, the following cases: *Van Blaricom v. Dodgson*, 220 N. Y. 111, 115, 115 N. E. 443; *Tanzer v. Read*, 160 App. Div. 584, 145 N. Y. Supp. 708; *Maher v. Benedict*, 123 App. Div. 579, 108 N. Y. Supp. 228; *Doran v. Thomsen*, 76 N. J. L. 754, 71 Atl. 296, and *McFarlane v. Winters*, 47 Utah 598, 155 Pac. 436, L. R. A. 1916D, 618.

We think that the holdings in the cases last cited in so far as they refuse to regard the driver of an automobile as the agent or servant of the owner, under such circumstances as exist in this case, would, as said in *Birch v. Abercrombie, supra,* "set a premium upon the failure of an owner to employ a competent chauffeur to drive an automobile kept for use of members of the family, even if he knew that they were grossly incompetent to operate it for themselves." The adoption of any rule contrary to that followed in this opinion would, in many instances, deprive the injured party of any remedy, owing to the usual financial irresponsibility of the owner's wife or child who may have been driving the automobile, at the time of the accident. The view taken herein tends to insure justice to parties injured by the negligence of drivers of automobiles without imposing undue hardship upon the owners; is favored by the weight of authority, and is supported by principle and reason.

For the reasons stated, the first thirteen assignments of error, which present the question above considered, are disposed of adversely to plaintiff in error.

The only remaining question presented is whether or not prejudicial error was committed, when the trial judge, in the absence and without the knowledge of counsel, sent for the jury on the day after it went out, and while still deliberating, and made to them the following remarks:

"Now, if I assume in my anxiety to have you exercise all the reason you can in endeavoring to come to an agreement,

that one or two, or three or four of you are standing out on mere questions of fact against the majority—why, all the court can say to you with any propriety, perhaps, is this: that you should think over those things; think over the natural differences of opinion that arise between twelve men, and try to put aside any little feeling that may possibly have arisen between you over your discussions, and put aside all antagonisms, if there be any, that may have arisen over irritated feelings—that is all natural and incident to all jury cases—and see if you cannot try reasonably to find in the fact that perhaps the greater number of you think one way, and the lesser number think another way, an excellent reason why those having the opinions that the lesser number have, should put aside feelings, and with fair minds try to refashion their own opinions, and see if the fault is not in themselves. That is a good way to look at the matter. Lay aside antagonism and reflect upon the great desirability of coming to an end with litigation even if it is not entirely satisfactory, doing it as intelligently and as reasonably as you can.

"The court's principal idea is that if any little feeling has arisen and some little mean things have been said, forget them and try to come together in some reasonable and fair fashion if you can, as jurors—the court not dictating to you at all as to your verdict, but only suggesting these things for your thought. * * * It is wise and sensible, as good citizens and good men, regardless of friendships or anything else, to try to take the whole evidence fairly; and if your differences arise out of a question of fact, try to harmonize them, reasonably if you can."

These remarks cannot be treated as an instruction within the meaning of section 192, Mills Ann. Code and, therefore, if otherwise proper, are not amenable to the objection that they were delivered out of the presence of the parties or counsel. Of the code section mentioned, it is said in *Tilley v. The Montelius Piano Co.*, 15 Colo. App. 204, 209, 61 Pac. 483, 485:

"We do not think that the section was intended to reach

or would embrace such communications as could not be construed to be instructions as to the law of the case."

Practically the same holding, under a like statute, was made in the case of *Burton v. Neill*, 140 Ia. 141, 118 N. W. 302. See also *Sturgis v. State*, 2 Okla. Cr. 362, 102 Pac. 57.

It is also urged that the remarks of the trial judge, as hereinbefore quoted, were a coercion of the jury. The rule is broadly stated in 38 Cyc. 1855, that it is "erroneous for the court by words or acts to threaten or attempt to coerce the jurors for the purpose of compelling them to render a verdict." We are convinced, however, that the remarks of the trial judge in the case at bar do not amount to coercion or to an attempt to coerce the jurors, but were entirely proper under the general rule mentioned in 38 Cyc. 1853, with reference to urging jurors to agree.

"Where the jury announce their inability to agree on a verdict, it is well within the discretion of the trial court to urge on them earnest effort to agree." Id. p. 1853. And the court may do the same though the jury do not announce their inability to agree. *Ashford v. McKee*, 183 Ala. 620, 62 So. 879, 884.

The objection to the remarks of the trial judge in the case at bar may be met by the language used in the opinion in the case of *Commonwealth v. Tuey*, 62 Mass. 1, as follows:

"The instructions went no further, than to say, that if any of the jury differed, in their views of the evidence, from a large number of their fellows, such difference of opinion should induce the minority to doubt the correctness of their own judgments, and lead them to a re-examination and closer scrutiny of the facts in the case, for the purpose of revising and reconsidering their preconceived opinions. In this view, the court did nothing more than to present to the minds of the dissenting jurors a strong motive to unanimity."

And we can also comment on the remarks in the language of the opinion in *Lathrop v. Fargo-Moorhead St. Ry. Co.*, 23 N. D. 246, 136 N. W. 88, as follows:

"(The remarks) did not go to the extent of indicating the opinion of the court on the facts, nor can it have left the impression upon any juror that he should surrender his conscientious convictions to secure an agreement."

We fail to see anything improper or coercive in the remarks of the trial court. The conclusion that there was no prejudicial error in the making of such remarks under the circumstances of the case, we think is sustained by the following cases, where the courts had under consideration a similar question: *Ahearn v. Mann,* 60 N. H. 472; *Gibson v. Minneapolis, etc., Ry. Co.,* 55 Minn. 177, 56 N. W. 686; *State v. Richardson,* 137 Ia. 591, 115 N. W. 220; *Smith v. Stanley,* 114 Va. 117, 75 S. E. 742; *Strepey v. Stark,* 7 Colo. 614.

No reversible error appearing in the record, the judgment of the District Court is affirmed.

*Affirmed.*

Decision *en banc.*

White, C. J., and Teller, J., dissent.