Hilma BORSTAD, Plaintiff and Appellant,

v.

James LA ROQUE, Defendant and
Respondent.

No. 7806.

Supreme Court of North Dakota.

July 20, 1959.

Duffy & Haugland, Devils Lake, for plaintiff and appellant.

Leslie R. Burgum, Atty. Gen., and Francis Breidenbach, Sp. Asst. Atty. Gen. (Gerald W. Vande Walle, Special Asst. Atty. Gen., on the brief), for defendant and respondent.

## EUGENE A. BURDICK, District Judge.

This is an action to recover damages for personal injuries sustained by the Plaintiff and Appellant, Hilma Borstad, in an upset of an automobile while riding as a guest passenger of the Defendant and Respondent, James La Roque, the owner and driver of the vehicle. The mishap occurred November 23, 1957, on State Highway 20 about one and one-half miles east of Tokio, North Dakota.

In her Complaint the Plaintiff alleges that the Defendant, at the time of the mishap, was driving his vehicle at a high and reckless rate of speed on a gravel surfaced road while under the influence of intoxicating liquor, that he did not have his vehicle under control, that he operated it in a reckless and grossly negligent manner resulting in the upset in which the Plaintiff was injured. In his answer to the Complaint the Defendant alleges that the Plaintiff herself was contributorily negligent and that she assumed the risk of injury from the condition of the Defendant and the manner in which the vehicle was driven. The action was tried to the jury. The jury returned a verdict in favor of the Defendant for a dismissal of the Plaintiff's claim for relief. The Plaintiff moved the trial court for a new trial in which she specified certain errors in law occurring at the trial and abuse of discretion by the Court. The motion for new trial was denied and the Plaintiff perfected this appeal from the order denying the motion for a new trial.

In her first assignment of error, the Appellant contends that the trial Court erred in permitting, over objection, certain cross-examination of the Plaintiff and in permitting impeachment testimony on a collateral issue. On cross-examination the Plaintiff testified without objection as follows:

"Q. Isn't it true just prior to impact you put arms around Jimmy and tried to kiss him? A. That is not true, I did no such thing. I sat on my side of the seat up to the accident happened, had pocket book like this and when went over pocket book went up over head and was back behind railing back of seat.

"Q. Now you were at that time emotionally involved with Jimmy? A. I definitely was not. I been married 16 years, have no emotional affairs by anyone else but my husband."

Thereafter, a third person, one Lyle Mahoney, was called by the Plaintiff and testified with regard to events on the day of the mishap. Upon cross-examination, the following testimony was adduced:

"Q. As a matter of fact you were little bit jealous of LaRoque because of attention he was getting from Mrs. Borstad?

"Mr. Haugland: Going to object—

"The Court: Overruled.

"Mr. Haugland: Wholly without scope.

"The Court: Goes to credibility or interest if any can be shown. I don't know.

"Q. Isn't that true? A. No."

Thereafter, the Defendant testified in his own behalf as follows:

"Q. Were you intimate with Mrs. Borstad—did you have dates with her? A. Yes, sir.

"Q. How many times would you say? A. There was lots of them, don't recall how many there were.

"Q. What did you do during those times at those dates? A. Well we would go up to Warwick and drink and then go sit in car and—

"Q. Now you heard her testify about and deny that she had been in a car accident—is that true? A. Yes, sir, it is true.

"Q. The truth is that you were in a car accident with her? A. Yes, sir.

"Q. Would you tell us about that? A. That was first time I met her. We went to Tolna, drank a lot of beer in Warwick, then went to Tolna, drank more beer, so she was driving pretty fast and that way, don't know how fast, fast enough could not make turn so went over into slough.

"Q. Whose car was that?

"Mr. Haugland: Going to object to this line of questioning—wholly immaterial, irrelevant and has no bearing on the lawsuit, move that all that testimony be stricken from the record.

"The Court: This is rebuttal to some of testimony offered on plaintiff's side.

"Mr. Breidenbach: For purpose of impeachment, your honor.

"The Court: Overruled.

"Q. Whose car was she driving at that time? A. Lyle Mahoney's."

While Plaintiff's objection to the testimony of the Defendant was made belatedly, the testimony is admissible on the issue of assumption of risk by the Plaintiff in entering the Defendant's automobile. This was not a collateral issue. It was proper for the jury to consider the extent and nature of the acquaintance between the parties, the Plaintiff's knowledge and experience with regard to the operation of a motor vehicle and with respect to the driving habits and driving abilities of the host. Helman v. Strong, 34 N.D. 228, 157 N.W. 986. There was no error in the ruling of the trial court with respect to this testimony.

The Appellant specifies as error the giving of the following instructions to the Jury:

"(A) I further charge you, members of the jury, that if you find from a fair preponderance of the evidence that the defendant managed and drove his pickup truck in such a manner as to constitute gross negligence on his part, as I will hereinafter define that to you, and that such gross negligence was the direct and proximate cause of the injuries sustained by the plaintiff, and if you should further find from a fair preponderance of the evidence that the plaintiff had assumed the risk, as I will hereinafter define that term to you, then you also must find for the defendant for a dismissal of the plaintiff's complaint.

"(B) The word 'intoxication' means a person whose passions or conduct is excited or similarly affected so the same is noticeable, or whose judgment is impaired by the use of liquor, and he must be so affected by the use of liquor so that it is noticeable to others.

"(C) If you should find in your deliberations that intoxication caused the accident because the defendant was in a condition which rendered him incapable of operating the pickup truck with proper diligence and skill, and that this was known or apparent to the plaintiff, that is a fact to be taken into consideration along with the other facts in the case in determining whether or not the plaintiff used ordinary or reasonable care in entering and remaining in the defendant's pickup truck. If an ordinary reasonable and prudent person would not have entered the vehicle driven by a person known to be intoxicated, or whose intoxicated condition was apparent, it would be negligent for one to so enter the vehicle and ride therein, and if injury resulted from the failure of the driver to operate the car with proper care and skill because of his intoxicated condition, then the person riding therein could not recover under those conditions.

"(D) A guest or gratuitous passenger is not negligent in riding with an intoxicated driver, or one under the influence of intoxicating liquor, if he was unaware of such intoxication, and no facts have been noticed by him which would arouse suspicion of one of ordinary prudence in relation thereto.

"(E) Therefore, if you find that the defendant was intoxicated you will determine whether that fact was known to the plaintiff, or that the intoxicated condition was so palpably apparent that it should have been known to the plaintiff, and that it was liable to affect his operation of the car, and you will then determine whether the plaintiff was negligent in entering the vehicle by the defense of ordinary negligence as I have already defined it.

"(F) and our law provides further that if the owner, driver, or person responsible for the operation of such vehicle was guilty of gross negligence or intoxication, as I have hereinbefore described those terms to you, but that the plaintiff was guilty of contributory negligence, or assumption of risk, as those terms have heretofore been defined, that then the plaintiff has no right of recovery against such person.

"(G) and there can be no assumption of risk arising on the part of the invited guest from the mere knowledge that the driver has consumed intoxicating liquor, if he was not intoxicated, although this may be a circumstance imposing upon the guest the exercise of reasonable care."

■ The Appellant contends that the vice of instruction B lies in that part of the definition of "intoxication" which requires the condition of the defendant to be "noticeable to others." This point is well taken. Under the instructions complained of, the jury may have found that intoxication of the Defendant induced negligent conduct of the Defendant proximately causing the mishap and resulting injury to the plaintiff, but because of lack of evidence of the more obvious manifestations of intoxication, such as odor of alcohol on the breath, uncoordinated movements, incoherent speech, dilated pupils, flushed face, et cetera, the jury may well have concluded that the intoxicated condition of the defendant, although otherwise proved, was not "noticeable to others" and hence was bound to find in favor of the Defendant. That the consumption of alcoholic beverage and its effect upon the driver as a superinducing cause of negligent conduct must have been proved by the testimony of competent witnesses, there can be no doubt. Liability under this exception cannot be predicated without substantial evidence. Thompson v. Hannah Farmers Co-op Elevator Co., N.D., 79 N.W.2d 31. The vice of the instruction lies in the fact that the instruction was equivocal and the jury may have understood it, contrary to the meaning intended, as requiring proof of an obviously drunken condition before liability could be imposed. As will be hereinafter explained, a state of drunkenness need not be shown. See Cyclopedia of Automobile Law and Practice, Secs. 2336 and 6186, Blashfield, Permanent Edition.

■ Of course, it is not necessary that each witness to the fact of intoxication must have observed behavior which in itself evinced an intoxicated condition. One witness may only have seen the driver consume intoxicating beverages. Another may only have observed the manner of driving or the speed of the vehicle, and yet each witness, from his limited vantage point at the time his observations were made, may not have been cognizant of the intoxicated condition of the driver. It is a question of fact for the jury to determine from a consideration of all of the proof—the cumulative effect of all of the evidence—whether the driver was in fact intoxicated at the time of the mishap, although his intoxicated condition may neither have been obvious to others nor observed by others and was proved only by circumstantial evidence.

■ Liability of the host driver for injuries caused by his intoxication arises from the so-called "guest statute" comprising sections 39–1501, 39–1502 and 39–1503, NDRC 1943 which read as follows:

"39–1501. 'Guest' shall mean and include a person who accepts a ride in any vehicle without giving compensation therefor.

"39–1502. Any person who as a guest accepts a ride in any vehicle moving upon any of the public highways of this state, and who while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. In the event that such person while so riding as such guest is killed or dies as the result of an injury sustained while so riding as such guest, then neither the estate nor the legal representatives nor heirs of such guest shall have any right of recovery against the driver or owner of said vehicle by reason of the death of such guest. If such person so riding as a guest is a minor and sustains an injury or is killed or dies as a result of injury sustained while so riding as such guest, then the parents, guardian, estate, legal representatives, and heirs of such minor shall have no right of recovery against the driver or owner or person responsible for the operation of said vehicle for injury sustained or as a result of the death of such minor.

"39–1503. The provisions of this chapter shall not be construed as relieving the owner, driver, or person responsible for the operation of a vehicle from liability for injury to or death of a guest proximately resulting from the intoxication, willful misconduct, or gross negligence of such owner, driver, or person responsible for the operation of such vehicle. In any action for death or for injury or damage to person or property by or on behalf of a guest or the estate, heirs, or legal representatives of such guest, the burden shall be upon the plaintiff to establish that such intoxication, willful misconduct, or gross negligence was the proximate cause of such death, injury, or damage."

■■ Noticeability of the intoxication of the host driver is not made an element of his liability. If liability of the host under the "guest statute" were to depend on the noticeability of his intoxication, responsibility of the host for damages sustained by the guest could seldom be fixed, for the reason that knowledge by the guest of the host's intoxicated condition would almost invariably give rise to the defense of assumption of risk. Under such a construction this exception to non-liability of the host would be virtually nullified. Liability arising from intoxication would be limited to those rare situations where the guest, although having knowledge of the intoxicated condition of the host, lacked freedom of choice or an appreciation of the danger to which he is exposed. The legislature could not have intended such a result. The "guest statute" being a limitation on the usual responsibility for negligence, the exceptions to non-liability should be given a broad rather than a narrow construction. We hold that it is not necessary that the intoxication of the host be obvious to others. The instruction given was clearly erroneous and prejudicial. While knowledge of the guest as to the intoxication of the host is not an element of liability of the host, it is, as will be shown, an essential element of the defense of "assumption of risk."

■ Instruction "A" set forth above must be considered in the light of other instructions given by the trial court. After defining "gross negligence" and "intoxication," the trial court charged the jury as follows:

(I) "I have defined these terms to you, and I repeat that the negligence required on the part of the defendant in order to find him liable is gross negligence as I have defined above, and the

negligence required of the plaintiff, to find whether or not she was guilty of contributory negligence, is ordinary negligence as I have defined it to you."

The effect of this instruction was to charge the jury that gross negligence was an element of liability under the "intoxication" exception of the "guest statute." This was not a correct statement of the law.

 Liability of the host arising from intoxication under the "guest statute" is not predicated on the mere impairment of judgment or even impaired ability to drive or operate a vehicle. It must be shown further that the mishap was proximately caused by negligent conduct of the host and that such negligence was superinduced by his own intoxication. Now, what kind of negligence must be shown under this issue? If gross negligence must be shown then it was redundant for the legislature to specify "intoxication" as an exception to non-liability of the host as "gross negligence" is also a specific exception. Again, the statute should be construed to give effect to all of the stated exceptions. This can mean only that ordinary negligence is sufficient when it is superinduced by intoxication of the host. See Frisvold v. Leahy, 15 Cal. App.2d 752, 60 P.2d 151; 60 C.J.S. Motor Vehicles § 399(3), note 53. This conclusion is also in harmony with a well recognized definition of "intoxication" and "intoxicated" as used with reference to the operation of a motor vehicle. See also Cyclopedia of Automobile Law and Practice, sec. 2336, Blashfield, Permanent Edition, citing, among others, Smith v. Baker, 14 Cal.App. 2d 10, 57 P.2d 960, 961.

In Smith v. Baker the court said:

"The word 'intoxication,' as used in our guest statute * * * has been held * * * to have a meaning similar to 'under the influence of intoxicating liquor' as that term is defined in People v. Ekstromer, 71 Cal.App. 239, 235 P. 69, 71. A person may therefore be said to be intoxicated or in a state of intoxication within the meaning of the

guest statute, if intoxicating liquor has so far affected his nervous system, brain, or muscles 'as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinary prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions.' "

This conclusion is also in harmony with our own definition of "under the influence of intoxicating liquor" as set forth in State v. Hanson, N.D., 73 N.W.2d 135, 136. In that case we said:

"The expression, 'under the influence of intoxicating liquor', has reference to consumption of intoxicating liquor which disturbs the mental and physical faculties of a person so that such person is no longer in his or her natural or normal condition, and when a person is so affected by intoxicating liquor as not to possess that clearness of intellect and control that such person would otherwise have, and which lessens such person's ability in any appreciable degree to handle his automobile, such person is 'under the influence of intoxicating liquor.' "

In Noble v. Key System, Ltd., 10 Cal.App. 2d 132, 51 P.2d 887, 888; the Court, construing a "guest statute" similar to ours said:

"The word 'intoxication' in section 141¾ must be given the meaning intended by the legislators. That it refers to the use of alcoholic liquor is unquestionable. A guest is prohibited under this particular section from obtaining redress for the omission of the driver of the vehicle to do something which an ordinarily prudent person would do under similar circumstances, or the doing of something which such person would not have done in the same situation, unless the act performed or the omission to perform the act proximately resulted from the intoxication

of the person responsible for the operation of the vehicle. Any degree of intoxication which, under all the circumstances of the case, proximately causes the doing or refraining from doing any act which is classified as a negligent act is a sufficient degree of intoxication to come within the statute."

In the light of the foregoing definitions which we approve, we hold that liability of the host under the "guest statute" is established when, by reason of intoxication, a host's normal mental and physical faculties for the safe and prudent operation of the motor vehicle are appreciably impaired and ordinary negligence of the host is thereby induced which proximately causes the mishap out of which the guest's injuries and damages arise.

We shall consider next the defenses of contributory negligence and assumption of risk. Instructions A, C, E and G, set forth above, deal with these issues. In addition to these instructions, the trial court, upon request of the jurors after they had retired to deliberate the case, orally instructed the jury in part as follows:

"The Court: In explanation of that —as to the matter of the assumption of risk it works this way, you don't consider it unless you have first found there was gross negligence—if you find gross negligence on the part of the defendant, and if you find also from a fair preponderance of the evidence that the plaintiff had assumed the risk then there is no liability.

"As determined from the evidence received here and the law upon which you were instructed. Would it be helpful if the Court said that the matter of asumption of risk is an affirmative defense and comes into question only after gross negligence, or in this case, intoxication, has been decided to be in existence. That is the first question for the jury to determine is whether or not there was gross negligence or intoxication—if that has been determined in the affirmative, and only then, does the question of assumption of risk come into being because it is an affirmative defense, then you then determine in this instance whether there was assumption of risk. If you find that there was assumption of risk, then, of course, the plaintiff cannot recover although in the first instance there, nevertheless, was gross negligence or intoxication, or both. It too must be proven by a fair preponderance of the evidence—same rule governs in connection with proof that is required as to gross negligence or intoxication in the first instance. And assumption of risk is when one has knowledge of those facts constituting gross negligence or intoxication, that you had to find in the first instance, or should have had knowledge by the use of ordinary care, but, nevertheless, went for the ride in which the accident occurred."

The Appellant argues that these instructions confused the Jury in suggesting that she would be barred from recovery if she had assumed the risk of injury in riding with an intoxicated driver although she may not have been negligent in doing so. There is no question but that the Court had in mind and conveyed to the jury the idea of separate defenses although the two defenses were somewhat confused.

There has been considerable confusion in the cases as to whether the defense of "assumption of risk" applies in tort cases not arising out of a contractual relationship. In Eddy v. Wells, 59 N.D. 663, 231 N.W. 785, 786, we pointed out, following Bolton v. Wells, 58 N.D. 286, 225 N.W. 791, that the term "assumption of risk" was not appropriate in absence of the master and servant relationship. This statement, of course, was dictum. In Bolton v. Wells, supra, we held that the trial court did not err in refusing to charge the jury that the plaintiff had assumed the risk of the mishap. In Eddy v. Wells, supra, we held that the plaintiff assumed the risk of the mishap

"unless he has shown * * * that the skidding and overturning was proximately caused by the Defendant's negligence." As we pointed out in the Eddy case, the term "assumption of risk" has been used by the courts in a variety of senses. In the two Wells cases, it was used merely to denote a conclusion of law arising from the absence of negligence on the part of the Defendant. The term was used in making it clear that the host driver was not an insurer for the safety of his guest passenger and that unless the mishap was proximately caused by negligence of the driver, the guest passenger would be deemed to have "assumed the risk" of injury from hazards incident to the exercise of ordinary care.

In the case at bar, the term "assumption of risk" is to be used in an entirely different sense. Here it is used as a defense in a case where liability of the host driver may otherwise be clear. In this sense, liability of the host upon any theory is taken for granted, and the question arises as to whether the guest passenger "assumed the risk" of injury to herself in voluntarily entering or remaining in the vehicle when she knew of the disabling effect of the intoxication of the host driver. Courts have divided on whether "assumption of risk" is merely a species of contributory negligence or constitutes a defense independent of the plaintiff's negligence. Several eminent writers [1] have commented on the origin and nature of "assumption of risk" and distinguish it from contributory negligence.

■ As applied to the defense raised by the host driver in an action by his guest passenger where liability of the host arises in tort, the guest will be deemed to have "assumed the risk" of injury arising from the mishap when (1) the guest has knowledge of a situation that is dangerous beyond that normally inherent in the operation of a vehicle whether caused by the obvious incompetence of the driver or by the dangerous condition of the vehicle, or otherwise, (2) an appreciation of the danger and a voluntary choice to encounter it, and (3) an injury proximately caused by the danger presented. This defense is not available if wrongful conduct of third persons was a proximate cause of the mishap, unless such conduct, like any other contributory cause, could reasonably have been anticipated by the plaintiff at the time the risk was assumed and thus served to compose the danger.

■ Contributory negligence, on the other hand, arises from the failure of the guest, in the same situation, to exercise ordinary care for his own safety and constitutes a defense, although wrongful conduct of third persons may have contributed as proximate causes of the mishap and resultant injury.

Both of these defenses arise from Section 9–1006, NDRC 1943 which reads as follows:

"Every one is responsible not only for the result of his willful acts but also for any injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself."

■ Considering the "guest statute" in the light of this section, it is clear that where the guest knows of the disabling effect of the intoxication of the host and, being aware that a dangerous situation beyond normal anticipation has been created and having an appreciation of the danger, voluntarily enters or voluntarily refrains from leaving the automobile as a passenger and a mishap occurs as the proximate result of the host's negligence superinduced by his intoxication and other hazards of which the guest is then aware, the guest will be said to have "assumed the risk" of the resultant injury. Likewise, it is clear that where the guest, though unaware of the disabling effect of the intoxication of

---

1. Prosser on Torts, Second Edition, page 303. Shearman and Redfield on Negligence, Rev.Ed. Sec. 135.

the host or that a dangerous situation has been created and fails to exercise ordinary care for his own safety and becomes an actor in the chain of causation by reason of his own negligent conduct, whether by affirmative acts of commission, such as fawning attentions to the driver, or by acts of omission, such as a failure to protest an unsafe rate of speed, the guest will be said to be guilty of contributory negligence barring his recovery. See Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424.

■ The defense of contributory negligence is established only when it is shown that the guest, had she exercised ordinary care, would have known that the Defendant's ability to operate or drive a vehicle had been appreciably impaired by reason of his intoxication and, while failing to exercise ordinary care for her own safety, voluntarily becomes or voluntarily remains a guest passenger of the Defendant.

■ The Plaintiff further specifies as error that the trial court erred in giving the following instructions to the Jury:

(H) "The defendant while on the witness stand admitted that he had plead guilty to a crime. The evidence was received as bearing upon the credibility of the testimony given on this trial and to assist you in determining how much weight and credit you will give to his testimony. It must not be considered for any other purpose and particularly it will not be considered as substantive proof of any facts alleged against him in this action."

Plaintiff contends that this instruction is prejudicial in that it directs the jury to consider evidence of a prior conviction only with respect to impeachment of the testimony of the Defendant, and not as substantive evidence of facts material to the issue of liability. It was shown by the testimony of Harold Brusletten, a state highway patrolman, that as a result of the accident in question, the Defendant was charged with the crime of driving a motor vehicle too fast for conditions and that the Defendant pleaded guilty to this charge. There was no evidence of any other criminal convictions of the Defendant. In a civil action arising out of a motor vehicle accident, evidence of the Defendant's plea of guilty to a criminal charge arising out of the same accident constitutes an admission and may be received in evidence as proof of the alleged wrongful conduct upon which liability is predicated. Of course, the evidence is not conclusive and may be explained. Clark v. Josephson, N.D., 66 N. W.2d 539. The instruction of the trial court in limiting the evidentiary effect of the Defendant's plea of guilty is clearly erroneous and prejudicial.

The Plaintiff also specifies as error that the trial judge abused his discretion in his comments to the jury after the jury had returned to the courtroom and before they had returned a verdict. The jury had been unable to agree upon a verdict and returned to the courtroom for further instructions. The following colloquy occurred:

"The Court: Well, it is now 4:50 approximately, 4:52, and you went out about 10:47 this morning—think there is any chance of arriving at a verdict?

"Mr. Lysne: Does not seem too much that way then.

"The Court: Anyone think there is a chance—like to have a verdict if there is a chance?

"Juror: Sure it is not.

"Juror: I don't think so.

"The Court: Not a matter or question insofar as law is concerned—matter of taking this position—can't seem to arbitrate or work out, that right? Is that the situation?"

Later we find the following:

"The Court: I would suggest that you go back to the jury room, discuss this matter a little further and advise bailiffs in the next ten minutes whether we should wait and what more time

you want or if you want to come back and discuss that further."

■ A new trial being necessary it is sufficient merely to observe that the trial court should scrupulously avoid any suggestion to the jury that would induce them to conciliate arbitrarily or coerce them into returning a verdict at the cost of any juror surrendering his honest convictions. Lathrop v. Fargo-Moorhead Street Railway Co., 23 N.D. 246, 136 N.W. 88.

The Order denying the motion for new trial is reversed and a new trial is granted. The case is remanded to the district court for further proceedings in conformity within the views herein expressed.

SATHRE, C. J., and MORRIS and BURKE, JJ., concur.

TEIGEN, J., being disqualified, did not participate; EUGENE A. BURDICK, Judge, Fifth Judicial District, sitting in his stead.